**NORKAN LODGE COMPANY LIMITED, Plaintiff,**

v.

**Dr. Randy R. GILLUM, Defendant.**

**Civ. A. No. 3–83–0306–H.**

United States District Court,
N.D. Texas,
Dallas Division.

June 5, 1984.

Jerry C. Alexander, Passman, Jones, Andrews, Holley & Co., Dallas, Tex., Law Firm of McConwell & Sullivan, Edward A. McConwell, Overland Park, Kan., for defendant/counterclaimant.

John Z. Vertes, Richard, Kingsmill, Vertes & Lang, Yellowknife, Northwest Territories, Canada, Mark C. Hill, Cantey, Hanger, Gooch, Munn & Collins, Fort Worth, Tex., Ralph H. Duggins, Midland, Tex., for plaintiff Norkan Lodge Co. Ltd.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

This case is before the Court on Plaintiff Norkan Lodge Company Limited's ("Norkan") Motion for Summary Judgment, and Brief in Support, filed March 26, 1984; Defendant Randy Gillum's ("Gillum") Response and Brief, filed April 30, 1984; and Plaintiff's Rejoinder, filed May 10, 1984.

Norkan brings this action to enforce a judgment entered in the Supreme Court of the Northwest Territories, Canada, in the case of *Norkan Lodge Company Limited v. Randy R. Gillum and Royal Aviation, Inc.*, Cause No. 5361, on September 17, 1982.

The Canadian case arose out of an alleged trespass and conversion committed by Gillum and his agents on Norkan's property in Canada. Gillum, despite receiving due notice, obtaining Canadian counsel, filing an answer, and appearing for his deposition in Canada, did not appear at the September 9, 1982, trial. The trial court received evidence, testimony, and entered its judgment in favor of Norkan in the amount of 73,851.56 Canadian dollars, representing special, general and exemplary damages, pre-judgment interest, and trebled costs. Gillum did not appeal the judgment. Norkan filed this action to enforce

the Canadian Judgment on December 22, 1982.

In support of its Motion, Norkan offers a certified and authenticated copy of the Canadian Judgment, as well as the Canadian trial transcript, and depositions and pleadings in this case. Norkan contends there are no genuine issues of material fact and that it is entitled to judgment as a matter of law pursuant to Fed.R.Civ.P. 56(c) and Article 2328b–6, Tex.Civ.Stat.Ann. (Vernon 1984 Supp.). Article 2328b–6, entitled the Uniform Foreign Country Money Judgment Recognition Act ("the Act") governs the decision whether Norkan's Canadian Judgment may be enforced in this Court. *See Royal Bank of Canada v. Trentham Corporation,* 665 F.2d 515 (5th Cir.1982).

The Act "applies to any foreign country judgment: (1) that is final and conclusive and enforceable where rendered...." Article 2328b–6, Section 3. The parties do not dispute that the Act applies to Norkan's Canadian judgment. Section 4 of the Act provides that:

> Except as provided in Section 5 of this Act, a foreign country judgment meeting the requirements of Section 3 is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. The foreign country judgment is enforceable in the same manner as the judgment of a sister state that is entitled to full faith and credit.

The parties dispute whether the exceptions set forth in Section 5 preclude enforcement of the judgment, or, as Gillum contends, whether factual issues exist as to the judgment's compliance with Section 5.

■ Section 5(a) provides:

*Grounds for nonrecognition*

Sec. 5. (a) A foreign country judgment is not conclusive if:

(1) the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;

(2) the foreign country court did not have personal jurisdiction over the defendant; or

(3) the foreign country did not have jurisdiction over the subject matter.

A fair reading of the statute indicates that application of Section 5(a) to a foreign country judgment is not discretionary with the Court. This issue, like all other issues arising under the Act, is one of first impression. The parties have submitted no decision interpreting or construing the Act, and the Court has been unable to uncover authoritative precedent interpreting Article 2328b–6. Gillum does not assert that either 5(a)(1) or 5(a)(3) are grounds for nonrecognition of Norkan's Canadian judgment. Gillum does, however, assert that the Canadian court lacked personal jurisdiction over him and that, accordingly, grounds for nonrecognition of the judgment exist under Section 5(a)(2).

■ Section 6 addresses the question of personal jurisdiction disputes under the Act. Section 6 in relevant part provides:

> (a) The foreign country judgment shall not be refused recognition for lack of personal jurisdiction if ...;
> (2) the defendant voluntarily appeared in the proceedings, other than for the purpose of protecting property seized or threatened with seizure in the proceedings or of contesting the jurisdiction of the court over him;

Gillum contends that the Canadian court lacked personal jurisdiction over him. Gillum admits that he undertook substantial acts in the Northwest Territory of Canada, that he was served personally with process, that he was present in the Northwest Territory for his and other depositions, and that these actions led to the eventual judgment in the Canadian court. (Gillum's Brief at 15). However, Gillum argues that he appeared only to contest the Canadian court's jurisdiction over him as an individual defendant. In support of his argument Gillum offers two paragraphs from his answer in the Canadian proceeding (filed on behalf of Gillum and Royal Aviation):

> 1. The defendants admit paragraphs 1, 2 and 3 of the Statement of Claim save as is hereinafter expressly admitted, and denies each and every other allegation

named therein and puts the plaintiff to the strict proof thereof.

7. In answer to paragraph 8 of the Statement of Claim, the Defendants state that the defendant GILLUM, was, at all material times, acting as representative and agent of the defendant ROYAL, a fact known to the plaintiff and further that at all material times, the defendant GILLUM was acting within the scope of his authority and the defendant GILLUM specifically denies any personal liability to the plaintiff.

The Court notes that in no portion of any of the pleadings submitted to the Canadian court does Gillum assert that the Canadian court lacked personal jurisdiction over him. Gillum's answer is at most a general denial, and the Court cannot find that Gillum even implies in his Canadian pleadings that he is making a special appearance solely for the purpose of contesting the Canadian Court's assertion of personal jurisdiction. Furthermore, Gillum does not produce any statement of his Canadian counsel or special pleading which supports his claim that he appeared specially. Gillum's Canadian counsel appeared with Gillum at his deposition in Canada, but counsel withdrew at some point thereafter, and Gillum never obtained substitute counsel, despite notices of a trial setting, service of the judgment, and notice of right to appeal. Gillum failed to appear at trial and failed to appeal the judgment entered. Based on these facts, Gillum's actions, and the Canadian pleadings presented, the Court finds no support whatsoever for Gillum's claim that he entered only a special appearance to contest personal jurisdiction over himself as an individual defendant. Having so found, the Court holds that Gillum may not avail himself of Section 5(a)(2) as a ground for arguing that the Canadian judgment is unenforceable.

██ Gillum also contends that there are material fact issues as to the Court's discretionary authority not to recognize a foreign country judgment under Section 5(b), which provides in relevant part:

(b) A foreign country judgment need not be recognized if:

.    .    .    .    .

(2) the judgment was obtained by fraud;

(3) the cause of action on which the judgment is based is repugnant to the public policy of this state;

.    .    .    .    .

(7) it is established that the foreign country in which the judgment was rendered does not recognize judgments rendered in this state that, but for the fact that they are rendered in Texas, conform to the definition of "foreign country judgment" in Section 2(2) of this Act.

First Gillum contends that the Canadian judgment was obtained by fraud. Specifically, Gillum points to instances in the trial proceeding where Norkan allegedly presented only its side of the evidence and did not fairly or completely present the facts of the dispute. For instance, Gillum asserts fraud occurred when Norkan's counsel presented portions of Gillum's deposition to the Canadian court without reading into the record certain other portions of Gillum's deposition. The Court notes, however, that the entire deposition was available to the trial court. Gillum asserts that Joe Kanik's deposition and trial testimony were inconsistent and this inconsistency amounted to fraud. Gillum also contends that Gillum's deposition testimony conflicted sharply with Kanik's trial testimony, and that the trial court's acceptance of Kanik's version of the fact over Gillum's indicates fraud rather than the trial court's credibility determination.

The Court is aware that fraud issues are not ordinarily susceptible to summary judgment. However, the Court finds that the issues of "fraud" alleged by Gillum to be the basis of the Canadian judgment are not fraud issues, but rather credibility questions and simple fact issues resolved in a legitimate manner by the Canadian court. The Court also finds that insofar as inconsistencies not offered to the trial court exist, the trial court had before it all evi-

dence relied upon by Gillum in asserting fraud. Furthermore, to the extent any inconsistencies or evidentiary contradictions existed, Gillum's failure to appear for the trial and contest Norkan's version of the facts must be considered. Gillum cites the First Circuit case of *Harrison v. Triplex Gold Mines*, 33 F.2d 667 (1929) as setting forth the standard for judging fraud as the basis for not recognizing a foreign country's judgment. However, the *Harrison* court points out that:

> In any case to justify setting aside a decree for fraud, it must appear that the fraud practised, unmixed with any fault or negligence of the party complaining, prevented him from making a full and fair defense, and that the fraud complained of was not involved in, or presented to, the court of first instance either at the original trial or in a petition for review. This rule is universal. False testimony or fabricated documents are not sufficient to justify the interference of a court of equity, if they have been presented to the court determining the law and fact in the first instance. The reason for the rule is that there must be an end to litigation.

*Id.*, at 671. Even under Gillum's own standards, his own failure to appear and raise these issues of "fraud" at the trial level, or on appeal, weigh strongly against this Court's consideration of these issues. The Court holds that Gillum has raised no genuine material issues of fraud by which Norkan obtained judgment in the Canadian court.

▇▇▇ Gillum also argues that the Court should not recognize Norkan's judgment under Section 5(b)(2) since the judgment is repugnant to the public policy of Texas. (Brief at 25). The Court notes, however, that Norkan's judgment may only be attacked in the event that "the cause of action which the judgment is based is repugnant to the public policy of this state," not the judgment itself. The Court holds that the causes of action alleged, trespass and conversion, are not repugnant to Texas public policy. The Court also holds that labeling as criminal trespass and conversion the conduct which was alleged, offered into evidence, and found by the trial court has not been shown to be repugnant to Texas public policy. Nor does the assessment of damages for these intentional torts, interest, or trebled costs, each of which is available under Canadian law, offend Texas' public policy.

▇▇▇ Finally, Gillum asserts that Norkan's judgment should not be recognized since the courts of the Northwest Territories would not recognize a similar judgment rendered by Texas courts. As such, Gillum relies on Section 5(b)(7) which states:

> (b) A foreign country judgment need not be recognized if:
>
> (7) it is established that the foreign country in which the judgment was rendered does not recognize judgments rendered in this state that, but for the fact that they are rendered in Texas, conform to the definition of "foreign country judgment" in Section 2(2) of this Act.

Section 2(2) states:

> (2) "Foreign country judgment" means a judgment of a foreign country granting or denying a sum of money, other than a judgment for taxes, a fine or other penalty, or a judgment for support in matrimonial or family matters.

The Court first recognizes that the statute, while disfavoring recognition of judgments from countries not reciprocally recognizing Texas judgments, *see Royal Bank of Canada v. Trentham Corp.*, 665 F.2d at 518–519, leaves the Court some discretion in this area. Secondly, the Court recognizes that before the statute's presumption against recognition of non-reciprocating countries' judgments is triggered, it must be "established" that the country at issue would not recognize similar judgments rendered in this state.

Gillum has cited no authority, Canadian or otherwise, for his contention that Canada would not enforce a similar judgment rendered by Texas courts. The Court can find no instance of a Texas court refusing to enforce a Canadian judgment against a party who has made a general appearance and then refused to appear for trial. Nei-

ther has the Court found an instance where a Canadian court refused to enforce a Texas judgment entered under similar circumstances. Thus, the Court holds that it has not been established that Canada fails to recognize similar judgments rendered in Texas. Accordingly, Gillum may not avail himself of Section 5(b)(7) of the Act to prevent the Court's recognition of Norkan's Canadian judgment. Under Section 4 of Article 2328b–6, Norkan's Canadian judgment is enforceable in this Court.

For the reasons stated herein, the Court holds that there are no genuine issues of material fact and that Norkan is entitled to judgment as a matter of law. Norkan's Motion for Summary Judgment is hereby **GRANTED**.

Plaintiff is directed to promptly submit a judgment prepared in accordance with this Opinion.

SO ORDERED.